**TOP–ALL VARIETIES, INC., Plaintiff,**

v.

**HALLMARK CARDS, INC. and Tarry-town Stationers, Inc., Defendants.**

**No. 68 Civ. 4132.**

United States District Court
S. D. New York.

July 10, 1969.

David Harrison Storper, New York City, for plaintiff.

Hughes, Hubbard & Reed, New York City, for defendants, Amalya L. Kearse, New York City, of counsel.

## OPINION

FREDERICK VAN PELT BRYAN, District Judge:

Defendants, Hallmark Cards, Inc. (Hallmark) and Tarrytown Stationers, Inc. (Stationers) move pursuant to Rule 12(b)(6) F.R.C.P. to dismiss the complaint for failure to state a claim upon which relief can be granted. Defendants have not answered and the motion is addressed to the face of the complaint.

The complaint, laid under the Sherman and Clayton Acts, 15 U.S.C. § 1 et seq., in substance alleges the following:

Plaintiff, Top-All Varieties, Inc. (Top-All) is in the business of leasing, equipping, stocking and franchising retail stores under the trade name "Big Top" for the sale of greeting cards, stationery, toys and related merchandise in New York, New Jersey and Connecticut. Defendant, Hallmark, is the largest manufacturer of greeting cards in the United States. Defendant, Stationers, operates a retail store in Tarrytown, New York for the sale of greeting cards, stationery, toys and related merchandise and is supplied with greeting cards by Hallmark.

Hallmark's cards are recognized as the leading brand in the United States and have wide customer acceptance. There are, however, other manufacturers of greeting cards and there is no suggestion that full lines of such cards are not freely available. Hallmark has supplied its line of greeting cards to franchised Big Top stores and the line has been a significant factor in attracting customers.

Top-All is about to open a new franchised store in Tarrytown. Hallmark has refused to supply its greeting card line to that store. It is alleged that Hallmark's refusal to do so stems from an agreement between Hallmark and Stationers providing that Stationers will continue to purchase the Hallmark line upon condition that Hallmark will not supply the line to the new Big Top store in Tarrytown.[1] Apparently, the theory is that Hallmark has an exclusive dealership arrangement with Stationers which makes Stationers the sole Hallmark dealer in the Tarrytown area. This course of conduct is alleged to violate the Sherman Act and Top-All seeks treble damages and injunctive relief against continued violation.

■ It is plain that an agreement between a manufacturer and a distributor setting up an exclusive territorial distributorship does not in itself violate the Sherman Act. See Packard Motor Car Co. v. Webster Motor Car Co., 100 U.S. App. D.C. 161, 243 F.2d 418 (1957); Schwing Motor Co. v. Hudson Sales Corp., 239 F.2d 176 (4th Cir.1956); Potter's Photographic Applications Co. v. Ealing Corp., 1968 Trade Reg.Rep. ¶ 72,622 (E.D.N.Y.1968); Peerless Dental Supply Co. v. Weber Dental Manufacturing Co., 283 F.Supp. 288 (E.D.Pa.1968). As the Supreme Court has recently said:

"* * * [A] manufacturer of a product, other and equivalent brands of which are readily available in the market, may select his customers, and for this purpose he may 'franchise' certain dealers to whom, alone, he will sell his goods. Cf. United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). If the restraint stops at that point—if nothing more is involved than vertical 'confinement' of the manufacturer's own

---

1. The complaint alleges a "monopoly" of Hallmark cards by Hallmark (a scarcely surprising situation) and a "conspiracy" between Hallmark and Stationers, both said to violate the antitrust laws. Recognizing the difficulty of sustaining a theory that a manufacturer violates

the antitrust laws by monoplizing its own product as distinguished from a product market, Top-All, on this motion, takes the position that the action is based on an unlawful agreement rather than on monopolization.

sales of the merchandise to selected dealers, and if competitive products are readily available to others, the restriction, on these facts alone, would not violate the Sherman Act." United States v. Arnold, Schwinn & Co., 388 U.S. 365, 376, 87 S.Ct. 1856, 18 L.Ed. 2d 1249 (1967).

The complaint in the case at bar does not go any farther than this. It simply alleges an agreement between a manufacturer and distributor allocating a specific limited territory exclusively to the distributor with competitive products readily available to others.

There are cases where arrangements going beyond a simple exclusive distributorship arrangement may violate the Sherman Act. For example, where competitors of the exclusive distributor are excluded from effective competition because "other and equivalent brands * * * [of goods] are [not] readily available in the market." (United States v. Arnold, Schwinn & Co., supra, p. 376, 87 S.Ct., p. 1864) the effect on interbrand competition may be so anticompetitive as to indicate a violation of the Sherman Act. But there are no such allegations here.

Nor are there allegations as to exclusive distributorship arrangements involving vertical or horizontal conspiracy among competitors (see United States v. General Motors Corp., 384 U.S. 127, 86 S. Ct. 1321, 16 L.Ed.2d 415 (1966)) or as to restraints placed upon the exclusive distributor's actions after he is supplied with goods by the manufacturer (see United States v. Arnold, Schwinn & Co., supra), with consequent substantial restraining effects on competition.

■ While Hallmark is alleged to be the largest producer of greeting cards in the United States, the complaint recognizes that there are other competing manufacturers who can supply Top-All with such products. It is alleged that Hallmark cards are the leading brand of greeting cards and that customers wishing to purchase them will take their trade only to a store handling Hallmark products. But this does not make the exclusive distributorship invidious or unlawful.

■ There is no claim here that there is not a substantial market for the sale of cards produced by Hallmark's competitors. There is nothing indicating that saleable lines of other greeting card manufacturers are not fully available to the plaintiff. Thus, the complaint does not allege that interbrand competition is affected in any way by the Hallmark exclusive distributorship arrangements with Stationers. The complaint fails to state a claim for violation of the Sherman Act.

Plaintiff's reliance on Klor's v. Broadway-Hale Stores, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), is misplaced. The Klor's case involved a conspiracy between a large number of nationally known appliance manufacturers and distributors and Broadway-Hale Stores, a retail distributor of appliances and a competitor of Klor's, to refuse to sell to Klor's or to sell only at discriminatory prices. There are indications that Broadway-Hale extracted the agreement by use of its monopoly buying power. Thus the Klor's case involved a predatory conspiracy with both horizontal and vertical elements directed at a single competitor with the purpose of driving that competitor from the field by foreclosing all sources of supply.

It is apparent that the allegations in the Klor's complaint go far beyond the simple exclusive distributorship alleged in the case at bar. The allegations here that that the Hallmark-Stationers agreement was designed to deprive Top-All of the Hallmark line of cards for its Tarrytown store and thus to impair its competitive position with respect to Hallmark cards in the Tarrytown area does not bring this case within the ambit of Klor's. Such results necessarily flow from any exclusive distributorship arrangement and are one of its purposes. There is nothing in such an arrangement, as has been alleged here, which makes out a case of antitrust violation.

The complaint here fails to state a claim upon which relief can be granted. The motion of defendants to dismiss the complaint will, therefore, be granted.

It is so ordered.