Michael **BECKMAN**, Plaintiff,

v.

**WALTER KIDDE & COMPANY**, Inc. and **Fyre-Safety, Inc.,** Defendants.

No. 70–C–29.

United States District Court,
E. D. New York.

Sept. 23, 1970.

Lawrence Lauer, New York City, for plaintiff.

Gates & Laber, New York City, for defendants; Nathan H. Gates, Bradley B. Davis, Allan S. Gershgorn, New York City, of counsel.

BARTELS, District Judge.

Plaintiff, Michael Beckman, entered into a written Regional Distributorship Agreement with the defendant Fyre-Safety, Inc.,[1] whereby Beckman was granted the exclusive right in certain New York counties to sell fire alarm systems manufactured by the defendants. At the same time Fyre-Safety entered into an oral understanding with Beckman granting Beckman the right to purchase from Fyre-Safety fire extinguishers purchased from the co-defendant, Walter Kidde & Company, Inc.[2] In March, 1967, the defendants refused to sell any more fire extinguishers to Beckman. Claiming that both defendants and their distributors or other "businessmen" had conspired to restrain and monopolize commerce in violation of Sections 1 and 2 of the Sherman Act, 26 Stat. 209, as amended, 15 U.S.C. §§ 1[3] and 2,[4] Beckman brought this action for treble damages and reasonable attorney's fees. He now moves for summary judgment upon these claims, and the defendants cross-move for the same relief. The facts as set forth in Beckman's pleadings

---

1. Fyre-Safety, Inc. was a wholly owned subsidiary of Walter Kidde & Company, Inc., which ceased doing business on December 31, 1967.

2. Beckman claims that the right to purchase Kidde fire extinguishers was an oral term of the written distributorship agreement. The defendants assert that Beckman was permitted to purchase the extinguishers as a matter of courtesy. Resolution of this dispute is not here required.

3. Section 1 provides in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal * * *."

4. Section 2 provides in pertinent part: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor * * *."

and affidavits are susceptible of a brief exposition.

After the execution of the written franchise agreement and the oral agreement with respect to fire extinguishers, Fyre-Safety, in March, 1967, refused to continue to sell Beckman fire extinguishers which they had previously supplied. Beckman asserts that this refusal to sell was pursuant to a conspiracy with distributors or businessmen and therefore constitutes a *per se* violation of the Sherman Act. The allegation of conspiracy first appears in the complaint wherein Beckman alleges that "on or about the 8th day of March, 1967, the defendant, WALTER KIDDE & COMPANY, INC., entered into an agreement with its distributors of fire extinguishers other than the plaintiff wherein and whereby it was agreed that the plaintiff would be denied the right to make further purchases of the Walter Kidde line of fire extinguishers." In his affidavit in support of his motion for summary judgment Beckman's only reference to a conspiracy is his description of the cause of action as one "to recover damages under Sections 1 and 2 of the Sherman Act upon the ground that the defendants conspired with other businessmen to deprive the plaintiff of access to merchandise which the plaintiff had been previously selling and renting to members of the general public."

Kidde and Fyre-Safety do not contest the contractual background and the refusal to sell but strongly dispute Beckman's allegation that Fyre-Safety refused to ship to Beckman because of a conspiracy. In support of this position, the defendants submitted the affidavit of William R. Yocom (the National Sales Director for Fyre-Safety in the years 1966 and 1967), wherein he states that he is thoroughly familiar with the facts of the case and that he categorically denies the existence of any conspiracy. He further deposes that Fyre-Safety was always willing to sell fire extinguishers to Beckman but that Beckman refused to pay Fyre-Safety's price increase for the extinguishers. Yocom further avers in his affidavit that "Fyre Safety was a small company, Kidde itself does not dominate the fire extinguisher field, and plaintiff could easily have purchased fire extinguishers from any number of companies some smaller and some larger than Kidde." Beckman does not dispute this latter statement.

Beckman in his affidavit in opposition to defendants' cross-motion for summary judgment denies that the refusal was predicated upon a price increase but states that there was a flat refusal to sell, and that the defendants nowhere in their papers have indicated the amount of such increase for the fire extinguishers and whether it applied equally to the customers of both defendants. In the same affidavit Beckman states that "when we have the answers to these questions, we might find an inter-company conspiracy as well as a conspiracy between the defendants and their other dealers. This case cries out for the full use of all the Discovery Procedures set forth in the Federal Rules of Civil Procedure." Following the alleged refusal to sell on March 8, 1967, Beckman terminated his distributorship agreement with Fyre-Safety by means of a letter dated April 12, 1967, written by his attorney, in which no mention was made that the termination was in any way due to defendants' refusal to sell or to any conspiracy.

The motions for summary judgment are addressed to both Section 1 and Section 2 claims under the Sherman Act. Section 2 prohibits monopolizing, or attempting to monopolize, or combining with others to monopolize, trade or commerce within any defined market. As to Section 2, the complaint and supporting affidavits are bereft of any statement showing or suggesting that either defendant violated this section; consequently, with respect to this claim, plaintiff's motion must be and is hereby denied and defendants' cross-motion must be and is hereby granted. McElhenney Co. v. Western Auto Supply Company, 269 F.2d 332, 339 (4th Cir. 1959); see Periodical Distributors, Inc. v. American

News Company, Inc., 416 F.2d 1330 (2d Cir. 1969); Top-All Varieties, Inc. v. Hallmark Cards, Inc., 301 F.Supp. 703 (S.D.N.Y.1969).

■ The real issue in this case concerns plaintiff's motion for summary judgment under Section 1 of the Sherman Act and defendants' cross-motion for summary judgment with respect to the same claim. This section proscribes any contract, combination, or conspiracy in restraint of trade. To recover under this section plaintiff must establish (1) that there was a contract, combination, or conspiracy, and (2) that such contract, combination, or conspiracy was in [undue] restraint of trade. House of Materials, Inc. v. Simplicity Pattern Co., 298 F.2d 867 (2d Cir. 1962). The question posed is whether the complaint and affidavits of Beckman are sufficient to raise any genuine issue concerning the two material facts above delineated. At the argument the court observed that Beckman's complaint and initial affidavits were conclusory in nature and lacked the necessary specifics to raise a genuine issue as to a material fact concerning either of the two elements necessary to constitute a Section 1 violation.

■ The purpose of a summary judgment is to screen out sham issues and "to discover whether one side has no real support for its version of the facts," (Community of Roquefort v. William Faehndrich, Inc., 303 F.2d 494, 498 (2d Cir. 1962)), and "summary judgment cannot be defeated by the vague hope that something may turn up at trial." Perma Research and Development Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969); see Radio City Music Hall Corporation v. United States, 135 F.2d 715 (2d Cir. 1943); Jones v. Borden Company, 430 F.2d 568, 5th Cir., July 15, 1970. Following the caveat of the Court of Appeals that "there may be some instances where summary judgment is too

blunt a procedural device for deciding difficult cases. See, for example, Miller v. General Outdoor Advertising Co., 337 F.2d 944 (2d Cir. 1964)" (Perma Research and Development Co. v. Singer Co., *supra*, 410 F.2d at 578; Dolgow v. Anderson, Slip Op. No. 711, 2d Cir., September 2, 1970), the court deferred its decision on the motion and offered to set down the application for a hearing one month thereafter, on June 10, 1970, in order to enable Beckman to establish, if possible, any specifics or facts in support of the existence of the conspiracy or the restraint of trade alleged as a *per se* violation of Section 1. See Rule 43(e), Fed.Rules Civ.Proc., 28 U.S.C.; 6 Moore's Fed.Prac. ¶ 56.11(7). During this interlude Beckman would have had ample opportunity, by means of discovery, to identify any distributors or others who were parties to the alleged conspiracy and to supply some evidence indicating in what manner there had been a restraint of trade.

Although in his papers he formally cried out for discovery, Beckman rejected the court's overture with its accompanying opportunity and, instead, relied upon the sufficiency of the complaint and affidavits already submitted. It was the court's inclination to immediately grant summary judgment in favor of the defendants. However, to remove any doubts as to whether any triable issue existed, the court then requested both parties to submit additional affidavits supporting their respective positions, which they did. Beckman submitted two additional affidavits but neither of them indicates that there exists a genuine issue as to a material fact necessary to defeat a summary judgment motion.[5] Defendants submitted a second affidavit by William R. Yocom which substantiates in greater detail their position that the refusal to deal was not pursuant to a conspiracy and that no factual, and hence no triable issue, existed on this claim.

---

5. The first one is by Beckman's attorney and merely argues that although Fyre-Safety was a wholly owned subsidiary of Walter Kidde & Company, Inc., it never-

theless operated independently. The other affidavit, sworn to by Beckman, is addressed to a point not relevant to the issues presently before this court.

Specifically, he states that Fyre-Safety made an independent business decision on the basis of its cost analysis that it could not continue profitably to supply its customers with fire extinguishers without a price increase, that the decision was made without consultation with any distributor, competitor, or any other person, that the increase was applied equally to all distributors who wished to purchase fire extinguishers, and that at all times it was willing and indeed anxious to sell the plaintiff or any other customer fire extinguishers at the increased price.

Upon examination of the pleadings and the affidavits submitted by both parties, together with Beckman's refusal to resort to any further discovery proceedings, the court is convinced that there is no genuine issue as to a material fact with respect to the alleged violation of Section 1 of the Sherman Act. Accordingly, it hereby grants the defendants' cross-motion for summary judgment and hereby denies plaintiff's motion for summary judgment with respect thereto. Reference to the authorities in support of this conclusion is in order.

### Contract, Combination or Conspiracy

In both the complaint and his affidavits, Beckman refers to two possible combinations, one involving a conspiracy between Kidde and its distributors, and the other involving the relationship between Kidde and its subsidiary, Fyre-Safety. As to the first, the only answer given by Beckman to the defendants' categorical denial of such conspiracy or combination was a re-allegation by Beckman, without more, of the conclusion that there was a conspiracy between Kidde and its distributors or other businessmen. No specifics were offered as to the identity of those distributors or other businessmen or how or when they illegally conspired or combined. A party cannot raise an issue of fact simply by relying upon the complaint or an affidavit setting forth only a bald conclusion that is flatly denied. Of course, the combination requirements

of Section 1 may be satisfied by actions short of actual agreements. Facts indicating conscious parallelism by manufacturers or distributors, enforcement of resale price suggestions (United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960)), or even unwilling compliance by the plaintiff with a seller's price suggestions (Albrecht v. Herald Company, 390 U.S. 145, 150, n. 6, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968)), might satisfy this requirement. Beckman, however, failed to produce any particulars or facts which would suggest or permit the inference of a combination between Kidde and its distributors or other businessmen. The unembellished allegation of conspiracy, unsupported by any particulars disclosing a triable issue which can be called genuine, although sufficient to stand as a pleading, is insufficient to withstand a motion for summary judgment—especially after an opportunity has been given to offer details. See Dressler v. MV Sandpiper, 331 F.2d 130 (2d Cir. 1964). Rule 56(e), Fed.Rules Civ.Proc., 28 U.S.C.

Recognizing the insufficient foundation of the claimed conspiracy between Kidde and its distributors, Beckman sought to save his cause by the belated allegation that Fyre-Safety and Kidde engaged in an illegal conspiracy, citing Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951), condemning a conspiracy between two subsidiaries of a parent company. *Kiefer-Stewart*, however, is distinguishable on the crucial ground that the conspiracy in that case was between two competing subsidiary companies, whereas in the instant case Beckman does not contend or offer any evidence to indicate that Fyre-Safety and Kidde were in competition with one another. To the contrary, paragraph Sixth of the complaint alleges that "WALTER KIDDE & COMPANY, INC., dealt with and used the property and assets of the said defendant, FYRE-SAFETY, INC., and the said WALTER KIDDE & COMPANY, INC. so dominated

the affairs of the said co-defendant, FYRE-SAFETY, INC., so as to deprive the said FYRE-SAFETY, INC. of a mind, will or existence of its own." [6]

Assuming that there were some discussions between Kidde and its puppet, Fyre-Safety, which resulted in a refusal to sell to Beckman, the court cannot conclude that such discussions constitute a combination within the meaning of Section 1 of the Sherman Act or that they represent more than internal dialogue leading to a decision on the part of a single business unit to exercise its right to select or disenfranchise a particular distributor. See Alpha Distributing Company of California v. Jack Daniel's Distillery, etc., 207 F.Supp. 136 (N.D.Cal.1961), affirmed, 304 F.2d 451 (9th Cir. 1962). The district court case of Hawaiian Oke & Liquors, Ltd. v. Joseph E. Seagram & Sons, Inc., 272 F. Supp. 915 (D.Haw.1967), heavily relied on by Beckman in support of a broad application of *Kiefer-Stewart*, was recently reversed by the Ninth Circuit, stating at the time that "Surely a manufacturer and its national or regional distributor, whether a subsidiary or an independent, can agree to transfer their business from one wholesaler to another without running afoul of the group boycott *per se* rule, in the absence of some forbidden anti-competitive or monopolistic objective." Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., 416 F. 2d 71, 81–82 (9th Cir. 1969), cert. denied, 396 U.S. 1062, 90 S.Ct. 752, 24 L. Ed.2d 755 (1970). The conclusion that the *Kiefer-Stewart* principle is inapplicable, is consistent with the virtually unanimous opinion of legal commentators that too broad an application of this principle—in the words of two such commentators—"is inconsistent with the basic approach of antitrust limitations on business conduct. It would unreasonably penalize companies that resort to the incorporated form of doing business, hampering achievement of legitimate business goals unrelated to antitrust considerations, without substantially improving the capacity of the antitrust system to deal with anti-competitive conduct." Willis & Pitofsky, Anti-Trust Consequences of Using Corporate Subsidiaries, 43 N.Y.U.L.Rev. 20, 24 (1968). See note 47 of this article for a listing of commentators disputing the logic and advisability of a broad application of *Kiefer-Stewart*.

The parent-subsidiary conspiracy theory suffers from yet one more infirmity. Even assuming that Kidde and Fyre-Safety could conspire within the meaning of Section 1, Beckman has failed to indicate the nature of this conspiracy. Beckman predicates his allegation of conspiracy in part on questionable inferences arising from the defendants' claim that the refusal to ship arose out of an adjustment upward of its fire extinguisher prices. In his affidavit in opposition to the defendants' cross-motion for summary judgment, which sets forth this conspiracy theory for the first time, Beckman queried "whether there was an inter-company price increase, or was this the uni-lateral action of Fyre-Safety, Inc." He postulates that "when we have the answers to these questions, we might find an inter-company conspiracy." But one can hardly say that a Section 1 conspiracy exists because a subsidiary raises its price to a distributor upon learning by itself or from its parent that it is selling the item below an adequate profit margin. This is the factual position

---

6. In a subsequent affidavit Beckman's attorney attempts to retreat from this characterization of the relationship between the two defendants by claiming that his independent research has uncovered the fact that Kidde is a conglomerate which purchased all the stock in a number of corporations including Fyre-Safety, but nevertheless permitted these corporations to operate independently. Significantly, however, neither this nor any other affidavit of Beckman asserts that the defendants in any way competed with each other.

taken in the Yocom affidavit, and Beckman's conclusory allegation of filial conspiracy, without more, is insufficient to raise an issue.

### Restraint of Trade

██ To constitute a Section 1 violation the contract, combination, or conspiracy must be in restraint of trade. Generally speaking, an alleged combination in restraint of trade must be evaluated in terms of its market impact and only those conspiracies which unreasonably restrain competition in a particular market are proscribed. United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). However, the Supreme Court has designated certain classes of combinations as illegal *per se*, and in such cases the mere existence of the conspiracy constitutes a Section 1 violation—without any reference to market effect. Included among these illegal combinations are horizontal price fixing (United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 223, 60 S.Ct. 811, 84 L.Ed. 1129 (1950)), division of markets (United States v. Arnold, Schwinn & Co., *supra*, 388 U.S. at 378, 87 S.Ct. 1856; Addyston Pipe & Steel Co. v. United States, 175 U.S. 211, 20 S. Ct. 96, 44 L.Ed. 136 (1899)), and resale price maintenance (Dr. Miles Medical Company v. John D. Park & Sons Company, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911)). And, of course, a refusal to deal which is in furtherance of one of these illegal objectives, is itself a *per se* violation of the Sherman Act. Interphoto Corporation v. Minolta Corporation, 295 F.Supp. 711, 721 (S.D.N.Y. 1969), affirmed, 417 F.2d 621 (2d Cir. 1969). Beckman does not claim that the alleged conspiracy in this case comes within any one of these categories; nor does he allege any specific market impact arising out of the defendants' conduct.

██ Instead, Beckman relies on the contention that the refusal to deal in this case is a *per se* violation of Section 1 within the rationale of Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1957). He reads *Klor's* to mean that whenever there is a conspiracy resulting in a refusal to deal, Section 1 is violated. This contention runs counter to all past decisions. Were this not true, all exclusive franchises would be illegal since they are agreements between a manufacturer and a distributor requiring the manufacturer not to sell to other parties. But it is well settled that exclusive franchises in non-monopoly lines of commerce are permissible (United States v. Arnold, Schwinn & Co., *supra*, 388 U.S. at 376, 87 S.Ct. 1856; Ace Beer Distributors, Inc. v. Kohn, Inc., 318 F.2d 283 (6th Cir. 1963), cert. denied, 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 166 (1963)); even if they result in cutting off other distributors. Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., *supra*, 416 F.2d at 80–82. What Beckman failed to perceive is that the *per se* doctrine enunciated in *Klor's* has a limited area of operation. In *Klor's* the court was dealing with the rather unusual situation of a large chain store extracting, by means of its monopoly power, an agreement from a large number of nationally known manufacturers and distributors to refuse to sell to Broadway-Hale's competitor, Klor's, or to sell to it only at discriminatory prices. The *Klor's* court carefully limited its own reach by the statement that "this is not a case of a single trader refusing to deal with another, nor even of a manufacturer and a dealer agreeing to an exclusive distributorship." (359 U.S. p. 212, 79 S.Ct. p. 709). Thus treble damage actions predicated on overbroad applications of *Klor's* have been rejected with the explanation that the "Klor's case involved a predatory conspiracy with both horizontal and vertical elements directed at a single competitor with the purpose of driving that competitor from the field by foreclosing all sources of supply." Top-All Varieties, Inc. v. Hallmark Cards, Inc., *supra*, 301 F.Supp. at 705; Potter's Photographic Applications Co. v. Ealing Cor-

**1328**

poration, 292 F.Supp. 92 (E.D.N.Y. 1968).[7]

No facts are set forth by Beckman to bring this case within the ambit of *Klor's*. There is no averment that any source of supply other than Kidde was foreclosed to Beckman. Carbon Steel Products Corp. v. Alan Wood Steel Company, 289 F.Supp. 584, 589 (S.D.N.Y. 1968). Nor is there a hint that the other distributors of Kidde coerced Kidde not to deal with Beckman in order to eliminate Beckman as a competitor or to punish his non-compliance in a horizontal combination of the distributors. Compare United States v. General Motors Corp., 384 U.S. 127, 86 S.Ct. 1321, 16 L. Ed.2d 415 (1966) with Packard Motor Car Company v. Webster Motor Car Co., 100 U.S.App.D.C., 161, 243 F.2d 418 (1957), cert. denied, 355 U.S. 822, 78 S. Ct. 29, 2 L.Ed.2d 38 (1957).[8]

Thus the court is constrained to conclude that no genuine issue as to any material fact exists with respect to the claimed violations of Sections 1 and 2 of the Sherman Act and that, predicated upon his complaint and affidavits, Beckman is not entitled to the luxury of a trial upon non-existent issues. The apparent controversy between the parties is based upon Beckman's misapprehension of the governing law and since it is precisely for this type of case that summary judgment is intended (see Dressler v. MV Sandpiper, *supra*; Sadwith v. Lantry, 219 F.Supp. 171, 173 (S.D.N.Y. 1963)), the court hereby grants summary judgment for the defendants. So ordered.

---

7. Similarly, the other group boycott cases cited by Beckman are inapposite for in all of them there was "a purpose either to exclude a person or group from the market, or to accomplish some other anti-competitive objective, or both." Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., *supra*, 416 F.2d at 76.

8. It is deserving of note that there must be a relation between the elements of

joint action and undue restraint of trade. The only conspiracy alleged which could conceivably come within the ambit of *Klor's* is the one between Kidde and its distributors. A combination between Kidde and Fyre-Safety could hardly come within the rationale of the group boycott cases and thus, even if these two companies could and did combine, no *per se* Section 1 claim is made out.