**ARK DENTAL SUPPLY COMPANY, is a copartnership consisting of Archie Sherman and Robert Sherman**

v.

**CAVITRON CORPORATION, Clev-Dent and Coles Electronic Corporation.**

Civ. A. No. 70-2758.

United States District Court, E. D. Pennsylvania.

March 10, 1971.

---

A. E. Hurshman, Philadelphia, Pa., for plaintiff.

Judah I. Labovitz, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

In this suit charging violations of Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1, plaintiff[1] has filed a motion for summary judgment in its favor, and defendants have filed a motion for judgment on the pleadings, or in the alternative, for summary judgment in their favor. The motions are before the court for disposition on the pleadings and on affidavits of Robert E. Navin, president of defendant Cavitron Corporation (Cavitron), and Harry Leiter, former president of defendant Coles Electronic Corporation (Coles). Plaintiff has filed no countervailing affidavits.

Plaintiff is Ark Dental Supply Company, a partnership which deals in dental equipment. Over a period of several years, until sometime in 1970, plaintiff purchased[2] from Coles, which manufactured it, a product called "Radiosurg", (hereinafter referred to as the product), for sale to and use by dentists for electrosurgery. In November 1969, Cavitron acquired the capital stock of Coles. Thereafter responsibility for the manufacture and marketing of the product was transferred to Cavitron, and as part of the plan to liquidate Coles, the Coles manufacturing facility in Philadelphia was closed and its inventory of the prod-

---

1. The singular will be used throughout for convenience although the complaint refers to all those named in the caption as plaintiffs. See Rule 17(b), F.R.C.P.

2. Plaintiff's purchases from Coles totalled approximately $2,500 in 1968; $3,400 in 1969; and $1,500 for a portion of 1970.

uct was sold to Cavitron without restriction as to manner of marketing it. Marketing of Cavitron's products is and has been for many years accomplished through Clev-Dent, which is an integral division of Cavitron, not a separate entity. Clev-Dent's method of sale and service is through 350 dealers, at least five of whom are located in or regularly sell in the Philadelphia area. Clev-Dent has no contracts with its dealers and has neither imposed nor attempted to impose on them any territorial or other restrictions on their sales of Clev-Dent products.

At least three other manufacturers, Cameron-Miller, Parkell, and Ellman sell, for use in electrosurgery, dental units which perform the same function and compete with the product marketed by Clev-Dent.

Sometime during 1970 plaintiff apparently placed an order for certain of the Coles items and received in reply the following letter [3] (Exhibit A—Complaint):

"Clev-Dent division of Cavitron
Corporation
3307 Scranton Road . SW.
Cleveland . Ohio . 44109
July 16, 1970

Ark Dental Supply Co.
544 Commerce Drive
Yeadon, Pa. 19050
Gentlemen:

We are returning the enclosed order for Coles items which you recently sent in.

As you probably know, our parent company, Cavitron Corporation recently acquired Coles and the Coles line is now being marketed through Clev-Dent. As part of the transition, we are reevaluating the Coles marketing structure and programs (sic). Until that study is completed, we are restricting Coles sales to established Clev-Dent dealers, many of whom have loyally supported us for as long as fifty years.

If our study indicates that we can profitably use additional distribution in *Yeadon,* we will certainly be in touch with you.

> Very truly yours,
> s/ Ira Lansky
> m.m.
> Ira Lansky,
> Sales Manager"

Within a matter of months after receiving that letter, plaintiff instituted this suit charging that, in violation of Section 1 of the Sherman Act, Cavitron had conspired with Coles and Clev-Dent to terminate a relationship theretofore existing between plaintiff and Coles, preventing competition between plaintiff and other dealers in the sale of the Coles product, and restricting and allocating the territory of plaintiff, an independent contractor, in the resale of the product.

1. *Plaintiff's Motion for Summary Judgment.*

Plaintiff's motion for summary judgment in its favor is based entirely on United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed. 2d 1249 (1967) which condemns as unlawful *per se* territorial restrictions on resale by distributors or retailers of the manufacturer's product after the product has been purchased by them from the manufacturer. The instant case bears no resemblance whatsoever to *Schwinn.* Defendants have filed affidavits stating that no territorial or other limitations of any kind have been imposed or attempted to be imposed on any dealers as to the resale of products purchased from defendants. Plaintiff has filed no countervailing affidavit and indeed acknowledges the accuracy of the statement. Plaintiff's position is simply that by refusing to sell the product to it at all, defendants have imposed "a *total* restriction of plaintiff's territory and resales" (Page 1, Plaintiff's Reply Brief). This is a patent non-sequitur. Since the factual basis for the *Schwinn* holding is totally absent in this case, plaintiff's mo-

---

3. The letter appears to be a form letter. The underlined portions indicate the parts typed in.

tion for summary judgment will be denied.

2. *Defendants' Motion for Judgment on the Pleadings, or in the alternative, for Summary Judgment.*

■ Section 1 of the Sherman Act prohibits combinations and conspiracies which unreasonably restrain competition. Plaintiff alleges that a conspiracy and agreement exists among Cavitron, Clev-Dent and Coles. Defendants have asserted by affidavit, and plaintiff has not denied, that Clev-Dent is an integral division of Cavitron, and does not have a separate legal existence. As a division of Cavitron, Clev-Dent is not capable of conspiracy, apart from Cavitron. Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., 416 F.2d 71 (9th Cir. 1969), cert. denied, 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755, reh. denied, 397 U.S. 1003, 90 S.Ct. 1113, 25 L.Ed.2d 415 (1970); Goldlawr, Inc. v. Shubert, 276 F.2d 614 (3d Cir. 1960). What remains, therefore, is a charge of a conspiracy between Cavitron and Coles to refuse to sell to plaintiff. Defendants have asserted, and plaintiff has not denied, that Cavitron acquired the stock of Coles and Coles is now its subsidiary.

■ An agreement between a parent and a subsidiary to terminate a distributor, or substitute new distributors for old, is not an unreasonable restraint of trade in violation of Section 1 of the Sherman Act "in the absence of some forbidden anti-competitive or monopolistic objective." Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., *supra*, 416 F.2d at p. 82. Ace Beer Distribut., Inc. v. Kohn, Inc., 318 F.2d 283 (6th Cir.), cert. denied, 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 166, reh. denied, 375 U.S. 982, 84 S.Ct. 479, 11 L.Ed. 2d 428 (1963); Beckman v. Walter Kidde & Co., Inc., 316 F.Supp. 1321 (E.D. N.Y.1970) and cases cited therein.

It is uncontroverted in this record that there are products which perform the same function and are in competition with defendants' product; that there are five dealers handling defendants' product in the Philadelphia area, and that there are another 345 dealers nationwide who are free to sell in this area; that Cavitron ordered sales to cease to plaintiff and other Coles' dealers until a reorganization of marketing procedures was completed; and that defendants have not conspired with other manufacturers or dealers to prevent plaintiff from purchasing the product. Under the circumstances, there could be no unreasonable restraint of trade in defendants' decision to terminate sales to plaintiff. See Tripoli Co., Inc. v. Wella Corp., 425 F.2d 932 (3d Cir. 1970), cert. denied, 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62; Top-All Varieties, Inc. v. Hallmark Cards, Inc., 301 F.Supp. 703 (S.D.N.Y. 1969); Potter's Photographic Applications Co. v. Ealing Corp., 292 F.Supp. 92 (E.D.N.Y.1968).

■ The present record clearly indicates that there is no genuine dispute as to a material issue of fact. Indeed, plaintiff did not even see fit to file appropriate countervailing affidavits, but instead rested on the allegations in his complaint to establish a factual dispute for trial. Rule 56(e), F.R.C.P. makes it clear that "a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him." First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968); Tripoli Co., Inc. v. Wella Corp., *supra*. There is no exception for anti-trust cases. Summary judgment in defendants' favor, therefore, is appropriate in the instant case.

■ Mindful of the warnings of Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), however, entry of summary judgment in defendants' favor will be withheld for a period of 90 days to afford plaintiff the opportunity to pursue discovery to refute the factual allegations of defendants' affidavits and to place upon the record factual support for the existence of a material issue of fact for trial.