UNITED STATES of America

v.

ASHLAND OIL, INC.

No. 81–30038.

United States District Court,
M. D. Tennessee,
Nashville Division.

Feb. 26, 1982.

See also, D.C., 537 F.Supp. 433.

John Burley, U. S. Dept. of Justice, Chicago, Ill., for plaintiff.

John Fornaciari, Ray S. Bolze, Washington, D. C., for defendant.

## MEMORANDUM

WISEMAN, District Judge.

This Memorandum addresses the argument of defendant Ashland Oil that it "Should Be Treated The Same As Ashland-Warren" (heading XII in Defendants' Proposed Findings of Fact and Conclusions of Law, filed January 21, 1982) [hereinafter referred to as defendants' Brief]. This argument is made in conjunction with the pending motion of defendants Ashland-Warren, Inc., and Ashland Oil to dismiss the five indictments pending against them in this Court [1] on double jeopardy grounds. In four indictments Ashland-Warren is named as the single corporate defendant in separately charged schemes to rig bids on Tennessee highway construction projects, all in violation of section one of the Sherman Act, 15 U.S.C. § 1. Ashland Oil is the sole defendant in this indictment, and this is the only indictment in which Ashland Oil is charged.

---

1. *United States v. Ashland-Warren, Inc., et al.*, Criminal Nos. 81–30033, 81–30037, 81–30038, 81–30042, and 81–30043.

The double jeopardy challenge of defendants Ashland-Warren and Ashland Oil is based on their proposition that they were part of a single, massive, ongoing bidrigging conspiracy that extended throughout Virginia and Tennessee, if not the entire southeast. Defendants maintain that Ashland-Warren's convictions by guilty pleas to one bidrigging indictment and two informations [2] charging violations of section one in the United States District Court for the Eastern District of Virginia bar their prosecutions in this district. They assert that the double jeopardy prohibition contained in the fifth amendment of the Constitution bars their prosecutions in this district under section one for defendants' participation in what they claim to be the same section one conspiracy for which they have been convicted in Virginia. The Court now has the double jeopardy issue under advisement.

Defendant Ashland Oil has not previously been indicted for section one violations in connection with highway construction projects in either Virginia, Tennessee or anywhere else. Consequently, unless Ashland Oil can establish that it is the same corporate person that was previously convicted in Virginia, it has not yet been placed in jeopardy, and thus no double jeopardy defense can lie in its favor.[3] In apparent realization of this situation, Ashland Oil filed a motion on April 10, 1981, to dismiss this indictment, arguing that the government should have named Ashland-Warren as the defendant. The Court heard oral arguments and denied the motion from the bench on July 17, 1981. (The Court's summary written Order was entered the same day.) After the evidentiary hearing on defendants' double jeopardy motion (conducted October 26–30, 1981), the Court invited both sides to brief the issue of whether Ashland Oil has standing to raise the double jeopardy defense. Transcript of Evidentiary Hearing 1090–93. Defendant addressed the issue in Heading XII of its brief filed

after the evidentiary hearing, but the arguments and supporting authorities are virtually identical to those presented in the April 10 brief.

The essence of Ashland Oil's argument is that its corporate division that submitted the bids at issue in this indictment should be considered a separate corporate person apart from Ashland Oil, a person now embodied in the form of Ashland-Warren, Inc., a wholly-owned subsidiary of Ashland Oil. The Court rejects this argument and sets this indictment for trial on June 21, 1982. The Court has jurisdiction to proceed despite the double jeopardy claim raised by Ashland Oil because the argument is frivolous and devoid of any "colorable foundation." *See United States v. Lanci*, 669 F.2d 391, 394 (6th Cir. 1982), citing *United States v. Leppo*, 634 F.2d 101 (3d Cir. 1980), *cert. denied*, —— U.S. ——, 102 S.Ct. 503, 70 L.Ed.2d 379 (1981); *United States v. Dunbar*, 611 F.2d 985 (5th Cir.), *cert. denied*, 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980).

### The Facts

The factual basis for defendant's argument is found in the affidavit of Dan L. Denison, the Corporate Secretary of Ashland-Warren, Inc. Affidavit in Support of Defendant Ashland Oil, Inc.'s Motion to Dismiss the Indictment, filed April 10, 1981. The government has never challenged the statements made in this hearsay document, and thus the Court accepts the truth of the statements contained therein for the purposes of this ruling. The affidavit speaks for itself, but the Court will summarize its most relevant points.

On August 25, 1966, defendant Ashland Oil acquired all capital stock of Warren Brothers Company, a Delaware corporation engaged in highway paving and construction. From August 25, 1966, until March 25, 1968, Ashland Oil operated this con-

---

**2.** Criminal Nos. 80–000–22–R, 80–00071–R, 80–00072–R (E.D.Va.).

**3.** The government has not attempted to argue that the double jeopardy clause does not apply

to corporate defendants, a proposition that this Court would have rejected in any event. *See United States v. Hospital Monteflores, Inc.*, 575 F.2d 332 (1st Cir. 1978).

struction business as a wholly-owned subsidiary, operated completely independently of Ashland Oil. On March 25, 1968, Warren Brothers was divisionalized and became a construction division of Ashland Oil, a Kentucky corporation. The new division continued operations just as it had conducted them as a subsidiary. The Warren Brothers Division continued as such until October 1, 1977, when Ashland Oil transferred all the assets and liabilities of the Warren Brothers Division to Ashland-Warren, Inc., a wholly-owned subsidiary of Ashland Oil. The Ashland-Warren subsidiary had been formed in Delaware on February 27, 1975. Again, this change in corporate structure effected no practical alteration in the daily operations of the construction business.

The indictment in this case alleges that defendant Ashland Oil conspired to set up seven construction projects that were let by the state of Tennessee on July 29, 1977. Although the indictment never refers by name to Warren Brothers Division, there is no dispute that the actions alleged in the indictment were undertaken through the Warren Brothers Division of defendant Ashland Oil. As previously stated, the assets of Warren Brothers Division were transferred to Ashland-Warren, Inc., on October 1, 1977, little more than two months after the alleged events recited in the indictment.

Ashland Oil has continued its independent corporate existence throughout the relevant time period up to the present. The transfer of the assets of Warren Brothers Division to Ashland-Warren was simply that; Ashland Oil, the named defendant in this case, has never dissolved, merged, consolidated, or in any way altered its distinct corporate identity.

### The Law

■■ The constitutional question raised by defendant is whether the government has reindicted the same corporate "person," for purposes of the double jeopardy clause, that was convicted in the three bidrigging cases in Virginia. The double jeopardy prohibition applies equally to corporate as well as individual defendants in criminal cases. *See United States v. Hospital Monteflores, Inc., supra* note 3. In addressing the potential criminal liability of Ashland Oil, a Kentucky corporation, the Court must look primarily to Kentucky corporate law, unless there is a clear conflict with federal policy. *See United States v. Polizzi,* 500 F.2d 856, 906–09 (9th Cir. 1974) *cert. denied sub nom. Emprise Corp. v. United States,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1976).[4] Kentucky law is plainly contrary to Ashland Oil's position, but the Court will first examine Ashland's argument in light of federal cases relied upon by defendant before a specific discussion of applicable Kentucky corporate principles.

Ashland Oil's arguments in support of its proposition that it "should be treated the same as Ashland-Warren" for double jeopardy purposes are somewhat difficult to explicate. The essential point is clear, however; Ashland Oil insists that the Warren Brothers Division that submitted the bids at issue in this indictment has always been, in reality, a "single business unit," Brief at 98, and that the corporate form in which Warren Brothers existed as a division of Ashland Oil is "insignificant." *Id.* Ashland maintains that the former Warren Brothers Division, now embodied in the form of Ashland-Warren, should be treated as a separate person for double jeopardy purposes, and that this is the same person convicted in Virginia under the name Ashland-Warren. Defendant pleads that substance should control over form, quoting from a thoroughly distinguishable Supreme Court case dealing with a vertical, intra-enterprise Sherman conspiracy. *United States v. Yellow Cab Company,* 332 U.S. 218, 227, 67

---

**4.** Although Ashland Oil has raised a constitutional question as to the meaning of "person" under the double jeopardy clause, the Court perceives no reason why the analysis would be any different if this were purely a statutory construction under sections one and eight of the Sherman Act, 15 U.S.C. §§ 1, 7. *See Melrose Distillers v. United States,* 359 U.S. 271, 79 S.Ct. 763, 3 L.Ed.2d 800 (1959) (referring to state law in deciding whether a federal cause of action under the Sherman Act was saved after a corporate dissolution).

S.Ct. 1560, 1565, 91 L.Ed. 2010 (1947). Defendant further insists that Ashland-Warren should be the defendant in this case even though the indictment alleges an offense occurring before Warren Brothers Division was transferred to Ashland-Warren, because liability should "follow the business." Brief at 106.[5] Although this is not a necessary premise of its argument, Ashland Oil also asserts that the government deliberately chose to indict Ashland Oil in this indictment so as to avoid a potential double jeopardy problem. Id. at 107.

Defendant's appeals to "substance" in context of the necessarily artificial realm of corporate law represent a remarkable attempt to obfuscate the ultimate absurdity of its position. Defendant urges the position that an existing corporation cannot be held criminally liable for acts committed through agents of one of its divisions, at least when that division functioned as a "single business unit" whose assets have subsequently been transferred to a separate, preexisting corporate entity. Defendant's own brief is a testament to the emptiness of its argument. Not one of the twelve cases cited remotely supports defendant's position, and many are contrary authority. Defendant has also made no attempt to refer the Court to any aspect of Kentucky corporate law that might support its conclusion that Ashland Oil should be relieved from liability for the acts of its division's agents.

Five of the twelve cases cited by defendant involve "intra-enterprise" Sherman Act conspiracy issues of whether commonly-owned but legally distinct corporate entities can conspire with one another in violation of section one.[6] Intra-enterprise liability has absolutely nothing to do with this case, because there is no claim that corporate entities under the common ownership of Ashland Oil conspired with one another. See generally Note, "Conspiring Entities" Under Section 1 of the Sherman Act, 95 Harv.L.Rev. 661, 665–76 (1982).

Two of the twelve cases involve contractual interpretations to determine whether successor corporations had agreed to assume the liability of their predecessors in products liability actions. See Bouton v. Litton Industries, Inc., 423 F.2d 643 (3d Cir. 1970); Bippus v. Norton Co., 437 F.Supp. 104 (E.D.Pa.1977). Neither case held that the original personal injury plaintiffs lacked causes of action against the predecessor corporations; the courts merely found that the successor corporations had contractually agreed to be responsible for products liability claims against the predecessors. These cases are irrelevant to the issue at bar.

Cyr v. B. Offen & Co., Inc., 501 F.2d 1145 (1st Cir. 1974), a case heavily relied upon by defendant, discusses successor liability in a products liability case in which the successor held itself out as the same enterprise it succeeded. See id. at 1153. The well-reasoned opinion of Chief Judge Coffin, despite its numerous virtues, has no bearing on this case in any manner helpful to defendant, primarily because this is not a situation in which the potentially liable predecessor is

---

5. This is not a point of controlling significance, but the Court would observe that Ashland Oil's conclusion that Ashland-Warren should have been indicted in this case is not even internally consistent with its argument. If the Warren Brothers Division was a "single business unit" within Ashland Oil, presumably it is still a "single business unit" under Ashland-Warren, and thus should still be treated as a separate "person." It must be remembered that Ashland-Warren was incorporated in 1975, two years prior to Ashland Oil's transfer of the Warren Brothers Division. See Affidavit of Dan L. Denison, supra. Consequently, unless it were shown that Ashland-Warren consists solely of the transferred assets of Warren Brothers, even Ashland-Warren would not be

an appropriate defendant, since the former Warren Brothers would still be a distinct "single business unit" within Ashland-Warren's corporate structure. Defendant has not made this showing, however.

6. Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968); United States v. Yellow Cab Company, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947); Ogilvie v. Fotomat Corp., 641 F.2d 581 (8th Cir. 1981); Knutson v. Daily Review, Inc., 548 F.2d 795 (9th Cir. 1976), cert. denied, 433 U.S. 910, 97 S.Ct. 2977, 53 L.Ed.2d 1094 (1977); Syracuse Broadcasting Corp. v. Newhouse, 319 F.2d 683 (2d Cir. 1963).

out of existence. *In re Master Key Antitrust Litigation*, 1977–1 Trade Cases (CCH) ¶ 61,456 at 71,732–35 (D.Conn.1976), is defendant's centerpiece case. The *Master Key* court followed *Cyr* in finding a transferee corporation liable for the civil antitrust transgressions of its dissolved predecessor. The case also involves a contractual interpretation on which the court based an alternative finding of liability. This Court has no quarrel with the conclusions in *Master Key*, but, like *Cyr*, that was not a case in which the offending corporation still existed.

In *Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.*, 416 F.2d 71 (9th Cir. 1969), *cert. denied*, 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970), the district court had found an intracorporate section one conspiracy among the divisions of a single corporation. The district judge had concluded that the separate divisions were separate entities capable of conspiracy under the Sherman Act, but the Ninth Circuit reversed, expressly holding that corporate divisions cannot be treated as separate entities capable of conspiracy. *See id.* at 82–84. This holding severely undermines defendant's theory, which is based on the notion that a corporate division should be treated as a separate entity.[7] Nonetheless, defendant submits that the case somehow supports its argument. *See* Brief at 100–01.

The last of defendant's twelve cases (in the order the Court has addressed them) deals with situations in which existing corporations were dissolved and became divisions of their successors. *See Melrose Distillers, Inc. v. United States*, 359 U.S. 271, 79 S.Ct. 763, 3 L.Ed.2d 800 (1959); *United States v. Stone*, 452 F.2d 42, 44 (8th Cir. 1971). In *Melrose*, the Supreme Court held that dissolved Maryland and Delaware corporations remained criminally liable under sections one and two of the Sherman Act even after they became separate divisions of a new corporation under the same ultimate ownership. In *Stone*, the Eighth Circuit followed *Melrose* in upholding a district court's refusal to dismiss a conspiracy indictment against a corporation that had been dissolved approximately three years prior to the indictment.[8] The court applied New York law in holding that the dissolution of Amerbel, the predecessor corporation, could not preclude the assessment of criminal liability against it. *Id.* at 47.

Amerbel's successor, Wilmotte & Co., had also been indicted for the same charges, and was convicted and fined. On appeal Wilmotte argued that since the indictment alleged a single agreement to commit an offense, no double penalty should have been assessed against it as both the surviving and merged corporation. (Amerbel became a division of Wilmotte in 1966, and the indictment covered a range of years from 1961 to 1969.) The Eighth Circuit agreed with this argument, holding that Amerbel and Wilmotte were one person under the conspiracy statute, 18 U.S.C. § 371, and thus subject to only one maximum fine. *Id.* at 48.

*Stone* is of no comfort to defendants. The *Stone* court upheld the criminal liability of even a dissolved corporation, which is hardly the situation presented *sub judice.* The court's holding that only one penalty could be assessed on the facts of that case may or may not be correct, but it would be relevant to this case only if the government had indicted both Ashland Oil and Ashland-

---

7. Although the Court will not hold this against defendants, the Court would observe that in its double jeopardy brief filed on July 17, 1981, defendants argued, albeit in another context, that "[a] corporate division has no independent legal significance and cannot conspire apart from the corporation." Supplemental Memorandum in Support of Motions of Ashland-Warren, Inc. and Ashland Oil, Inc. to Dismiss the Indictments on Double Jeopardy Grounds or to Require an Election of Counts, at 37. Defendants expressly relied upon a case that followed

*Seagram* in holding that a corporate division is not capable of conspiracy apart from the corporation. *Ark Dental Supply Co. v. Cavitron Corp.*, 323 F.Supp. 1145, 1148 (E.D.Pa.1971), *aff'd* 461 F.2d 1093 (3d Cir. 1972).

8. The indictment covered the period of July 1, 1961, to January 1, 1969. Amerbel, the predecessor corporation, had ceased its separate existence in 1966. *See United States v. Stone, supra,* 452 F.2d at 44, 47.

Warren in this indictment. In any event, *Stone* is certainly no authority for defendant's ultimate argument that an existing corporation escapes criminal liability for past acts simply by discarding its offending element by a transfer of assets.

■ Having examined defendant's argument in light of the authorities cited,[9] the Court now turns to an examination of applicable Kentucky law. The Sixth Circuit has recently examined Kentucky corporate law in the context of ruling that a parent corporation is not immune from tort liability to its subsidiary's employees for the parent's own independent acts of negligence. *See Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655 (6th Cir.), *cert. denied*, 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979). The parent corporation, Blue Diamond, had claimed that it was immune under Kentucky's workmen's compensation statute on the ground that it and its subsidiary were part of an integrated business and should be considered a single employer. *Id.* at 658. In the opinion, Judge Merritt observed Kentucky's recognition of customary principles of corporation law, which hold that separate corporate identities should not be disregarded. He referred to an earlier Sixth Circuit case, *Poyner v. Lear Siegler, Inc.*, 542 F.2d 955 (6th Cir. 1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361 (1977), in which the appeals court declined to disregard the corporate fiction, recognizing "[t]he approach of the Kentucky Courts to piercing the corporate veil has been described as evincing 'a general aversion for any disregard of the corporate entity.'" *Id.* at 958. Judge Merritt then remarked upon the unusualness of finding a corporation arguing that the corporate fiction should be disregarded, or that its own corporate veil should be pierced. He then concluded Blue Diamond should not be allowed to avoid the consequences of its corporate structure to claim immunity from tort liability. 590 F.2d at 662–63.

■ This Court similarly concludes that Ashland Oil cannot claim identity with its subsidiary Ashland-Warren for purposes of applying the double jeopardy clause. Having chosen to operate its construction business through a division of its corporate person until October 1977, Ashland Oil cannot now be heard to claim that there were really two separate corporations all along. If Ashland had wanted its construction business treated as a separate entity earlier, it could easily have effected the subsidiarization of the construction business.

■ Finally, apart from the settled state of law that renders Ashland Oil's argument devoid of merit, the Court would briefly note the totally unsound policy implications of Ashland Oil's argument. Although Ashland Oil's claim has been raised in the context of a double jeopardy issue, the acceptance of its position would allow every corporate entity concerned about potential antitrust liability to impose a collateral obstacle to such liability simply by removing its offending element, e.g., by creating a subsidiary, and then arguing that the subsidiary was a separate person all along. Of course, that is not what happened in this case, because Ashland Oil transferred the assets of its construction business in 1977, more than two years before this indictment was returned. Nonetheless, the acceptance of defendant's argument would run afoul of the basic principle that a corporation cannot disable itself from liability for its acts simply by effecting some type of corporate transformation. *See Pierce v. United States*, 255 U.S. 398, 41 S.Ct. 365, 65 L.Ed. 697 (1921), *cited in Cyr v. B. Offen & Co., Inc.*, 501 F.2d 1145, 1153 (1st Cir. 1974).

*Conclusion*

Accordingly, the Court holds that the corporate person named in this indictment is a

---

9. The Court further observes that another authority cited by defendant, 15 Fletcher Cyclopedia of Corporations §§ 7122–7123 (1973 Revised Vol.), is directly contrary to defendant's position. For example, that treatise states the general rule, "which is well settled, is that where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor." *Id.* § 7122, at 188. This general rule applies equally to liability for torts of the transferor company. *Id.* § 7123, at 196.

completely distinct entity from the corporate person convicted in the Eastern District of Virginia, and thus defendant Ashland Oil has no standing to raise a double jeopardy claim. Because this contention is, indeed, frivolous and lacks any "colorable foundation," the Court finds that an interlocutory appeal would not divest its jurisdiction. *See United States v. Lanci*, 669 F.2d 391, 394 (6th Cir. 1982). This case is therefore set for trial on Monday, June 21, 1982, at 8:30 a. m. in Nashville.